IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JOHN JASON BAKENHUS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) 1:05-cv-01714-UWC-JEO |
| WARDEN D. B. DREW, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

This matter is before the court on the application of John Jason Bakenhus ("the petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1 ("Petition")). Upon consideration, the court finds that the application is due to be denied.

## BACKGROUND

The petitioner is serving an aggregate[1] 180 month term of incarceration followed by three years supervised probation premised upon his convictions in *United States v. Bakenhus*, No. 3:94-00137-001 (M.D. Tenn. 1996). The conviction includes charges of conspiring to violate the civil rights of another, the use of a firearm during the commission of a felony, two counts intimidation, and destruction of property used in interstate commerce, all in violation of 18 U.S.C. §§ 241, 924 and 42 U.S.C. § 3621(A). (Ex. D).[2] He has a projected release date of May 18, 2009, via good conduct time release. *Id*.

The petitioner asserts in this action that the Bureau of Prisons ("BOP") has miscalculated

---

[1] Pursuant to 18 U.S.C. § 3584(c), [m]ultiple terms of imprisonment . . . shall be treated, for administrative purposes as a single, aggregate term of imprisonment.

[2] The exhibits are located with the Respondent's Response. (Doc. 6 ("Response")).

and misapplied his federal sentence by failing to provide him with pre-trial jail credit to his federal sentence. The respondent counters that the petition is due to be denied.

## FACTS

The petitioner was identified as a suspect in a series of violent crimes (including arson and shooting into buildings) directed towards members of the minority community in Clarksville, Tennessee, in 1994. The matter was being investigated by a federal-state task force. (Bret Murray Declaration ("Murray Dec.") at 1).[3]

On August 21, 1994, the petitioner was under surveillance when sheriff's deputies observed suspicious activity, stopped his car, smelled kerosene, and obtained consent to search his car. (Murray Dec. at 1). The petitioner was then taken to the local Sheriff's Department and interviewed by F.B.I. Special Agent Bret Murray. *Id*. at 1-2. The petitioner confessed and was arrested by Sheriff's Deputies. *Id*.

The petitioner was later indicted, first by the state and thereafter by the federal authorities. (Murray Dec. at 2).[4] F.B.I. records reflect that the petitioner was first arrested by the United States Marshals' Service on the federal charges on December 20, 1994. (*Id*. at 2; Ex. E at 4, docket entry no. 10).[5]

The petitioner's presence in federal court for arrest and prosecution was secured by a federal writ. (Ex. E at 4-5, 8, 10, 12, docket entry nos. 6, 14, 15, 65, 94, 114, 118; Ex. G at 2).

---

[3] Murray's declaration is located at exhibit A.

[4] The petitioner was convicted of the state charges and sentenced to a 22½ year custodial sentence "to be served concurrently" with his federal sentence. (Ex. C at 2).

[5] The federal arrest warrant was issued on December 8, 1994, the same date the federal indictment was issued. (Ex. D at 4, docket entry no. 1).

On January 25, 1996, United States District Judge Thomas A. Higgins sentenced the petitioner to a total custodial sentence of 180 months. The petitioner was then returned to the Tennessee Department of Corrections. ("DOC"). (Ex. F; Ex. G at 2).

On August 23, 1996, the petitioner was sentenced to an aggregate term of twenty-two and one half years and ordered to pay restitution in excess of $65,000. (Ex. I; Ex. J at 2). The petitioner was granted 737 days pre-trial jail credit against his Tennessee sentences. (Ex. K).

The petitioner was released from the DOC on parole to the United States Marshal. He arrived at the Federal Correctional Center, Memphis, Tennessee, on July 10, 2000, to begin service of his federal sentence. (Ex. L).

On August 10, 2000, the BOP obtained approval to grant the petitioner *nunc pro tunc* designation for service of his sentence. His sentence was recalculated to reflect that the federal sentence was deemed to have commenced on the date of its imposition. (Ex. M).

## DISCUSSION

The petitioner asserts that he is being denied "pre-trial credits toward the service of his federal sentence" and that he must be re-sentenced pursuant to U.S.S.G. § 5G1.3(b). (Petition at 3). He also contends that his federal arrest date was August 21, 1994, and, therefore, the BOP should have given him that pre-trial detention credit against his federal sentence. *Id*. The petitioner further contends that he should be given additional pretrial credit toward the service of his sentence pursuant to *Kayfez v. Gasele*, 993 F.2d 1288 (7th Cir. 1993). *Id*. at 7-9.

In contravention of his arguments, the respondent asserts that the petition is due to be denied because this court is without jurisdiction to consider certain of his arguments, he has received appropriate credits, and he is not entitled to any further credits.

3

Initially, the petitioner asserts that his pre-trial detention time should have been credited against his federal custodial sentence under U.S.S.G. § 5G1.3(b).[6] Specifically, he seeks credit for the time served from August 21, 1994, until January 25, 1996. (Traverse at 1).[7] He appears to make this assertion premised on the fact that the state and federal convictions arose out of the same operative facts. (Petition at 4-6). The sentence imposed by Judge Higgins does not reflect whether he considered this provision in imposing his sentence.[8] Similarly, the petitioner does not note in his petition to this court whether he raised this issue on direct appeal or on collateral review under 28 U.S.C. § 2255. The respondent correctly notes that the unpublished opinion of the Sixth Circuit Court of Appeals affirming the petitioner's conviction and sentence does not contain any indication that the petitioner raised this argument on direct appeal. *See United States*

---

[6] The relevant parts of U.S.S.G. § 5G1.3 provides:

    (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

    (b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:

        (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

        (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. § 5G1.3.

[7] His traverse is located at document 7.

[8] The respondent notes in the response, "The proper way such a sentence is to be pronounced, at least in the Eleventh Circuit, is for the sentencing court to impose the offset (i.e., adjust the sentence to the lesser number that takes into account the pre-existing confinement) and state for the record that the sentence is within the sentencing guidelines because of the 5G1.3(b) offset. See United States v. Descally, 254 F.3d 1328 (11th Cir. 2001)." (Response at 6, n.5).

*v. Bakenhus*, 116 F.3d 1481 (Table), 1997 WL 345957 (6th Cir. 1997) (Unpublished).

To the extent that the petitioner asserts that he is entitled to sentence credit for this time pursuant to the Sentencing Guidelines, the respondent contends that he is procedurally barred from presenting this dilatory argument. (Response at 6-9). Specifically, the respondent claims that because this issue existed prior to or during sentencing, the issue was cognizable on direct appeal and could have been raised on collateral review in the circuit of his conviction pursuant to 28 U.S.C. § 2255. *See United States v. Flores*, 616 F.2d 840 (5th Cir. 1980). (Response at 7). Therefore, the respondent contends that the present remedy under § 2241 is inappropriate. More fully, the respondent asserts that the petitioner

> may not prosecute a Section 2241 habeas corpus petition because he cannot show that his Section 2255 remedy was "inadequate or ineffective" merely because the sentencing court denied relief. The Section 2255 remedy is not inadequate or ineffective merely because the sentencing court denies relief. McGhee v. Hanberry, 604 F.2d 9, 11 (5th Cir. 1979); see also In re Vial, 115 F.3d 1192 (4th Cir. 1997) ("[t]he remedy afforded by § 2255 is not rendered inadequate or ineffective merely because an individual has been unable to obtain relief under that provision . . . or because an individual is procedurally barred from filing a § 2255 motion. . . .").
>
> Similarly, if the petitioner did not raise the issue via a Section 2255 motion, then he is now precluded from raising it in the sentencing court by virtue of the fact that more than one year has lapsed since the finality of his conviction and sentence. 28 U.S.C. § 2255, para. 6(1). There are, however, a few exceptions that might permit the petitioner to file for leave to prosecute an otherwise untimely Section 2255 motion, but only the sentencing court and the court of appeals for the circuit of the sentencing court may make the decision as to whether the petitioner meets any exception to the general prohibition against a Section 2255 motion brought more than one year after the finality of the judgment.[9]

---

[9]The one year bar on § 2255 petitions is not absolute. 28 U.S.C. § 2255 (§ 2244(b)(2) contains parallel provisions) states that:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of-

In any event, because the petitioner has failed to show that his direct appeal and Section 2255 remedies were "inadequate or ineffective" to test the legality of his detention, this Honorable Court is without Section 2241 jurisdiction to consider his untimely Sentencing Guidelines argument.[10]

In his traverse, the petitioner states that he "is not bringing up a Sentencing Guidelines argument in regards to 5G1.3(b). However, if [the p]etitioner is not accredited with all the relevant conduct that was taken into account in his P.S.R. . . . it would constitute an upward departure that the Sentencing Court did not authorize." (Traverse at 4).

To the extent that the petitioner asserts a claim challenging his sentence under the Sentencing Guidelines, the court agrees that it is procedurally barred from review in this § 2241 action. Such a challenge could have been raised on direct appeal or in a timely post-conviction petition pursuant to § 2255. Additionally, he has not made the requisite showing that his other

---

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 (emphasis added). (Response at 9, n.7).

[10]"As the Eleventh Circuit stated in Wofford v. Scott, 177 F.3d 1236 (11th Cir. 1999),

The Seventh Circuit in [In re] Davenport [147 F.3d 605 (7th Cir. 1998)] suggested in dicta that the savings clause [of § 2255] might apply to some claims involving a "fundamental defect" in sentencing where the petitioner had not had an opportunity to obtain judicial correction of that defect earlier. See 147 F.3d at 611. We need not decide whether the savings clause extends to sentencing claims in those circumstances, or what a "fundamental defect" in a sentence might be. It is enough to hold, as we do, that the only sentencing claims that may conceivably be covered by the savings clause are those based upon a retroactively applicable Supreme Court decision overturning circuit precedent.

177 F.3d at 1244-45 (emphasis added). (Response at 9, n.8).

remedies were "inadequate or ineffective."

The petitioner next argues that the BOP should have granted him detention credit for the state pretrial time he spent in custody prior to the imposition of his federal custodial sentence even apart from the Sentencing Guidelines. (Petition at 6). The respondent initially counters that he is not entitled to credit for this time because he was arrested by state, not federal, authorities on August 21, 1994. That is correct. First, the declaration of Agent Murray demonstrates that the petitioner was arrested by state and not federal authorities. (Murray Dec. at 1; see also Ex. G & H). Second, if the petitioner had been arrested by federal authorities, he would have been processed by the FBI and the United States Marshal, and would have been presented to a United States Magistrate Judge for an initial appearance on that date. These events did not occur on that date or a time in close proximity thereto in this case. (Ex. E). Third, if the petitioner had been in federal custody, there would have been no need to issue an order for production of the petitioner each time he was brought to court. This is also evidenced by the Prisoner Tracking report of the United States Marshal showing the issuance of writs of habeas corpus ad prosequendum to obtain the defendant's presence in court. (Ex. G at 2). Finally, the testimony of the Montgomery County, Tennessee Jail Administrator before the sentencing court also shows that the petitioner was in state custody:

> Q. He [the petitioner] is a state prisoner, is he not? In state custody? Do you know whether he's committed under state order or federal order?
>
> A. My presumption was he's under federal.
>
> Q. Well, to correct your assumption, if you were advised that it was necessary for this court to issue a writ for his production, would that make sense to you, being the fact that he's a state prisoner?

> A. Yes, sir.
>
> Q. And that he was produced here pursuant to an order directing the sheriff of Montgomery County to produce him for these proceedings?
>
> A. Yes, sir.

(Petition at Ex. B at 75).

In view of the circumstances, the respondent is correct that the petitioner cannot show that his "'state confinement was exclusively the product of such action by federal law-enforcement officials [so] as to justify treating the state jail as the practical equivalent of a Federal one. United States v. Harris, 876 F.2d 1502, 1506 (11th Cir. 1989)." (Response at 12). Additionally, the respondent is correct that "even if the petitioner were in primary federal custody upon his arrest, he would still not be entitled to credit against his federal sentence because the credit was previously applied toward his state sentence." *Id*.

The law is clear, 18 U.S.C. § 3585(b) provides:

> A defendant shall be given credit toward the service of a term imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; *that has not been credited against another sentence*.

18 U.S.C. § 3585(b) (italics added). The DOC records reflect that the petitioner was granted 737 days of pre-trial credit on his state sentence which represents credit from August 21, 1994, the date of the petitioner's arrest on state charges, to August 23, 1996, the sentencing date. (Ex. B at 2; Ex. K). Because the petitioner has already received the pre-trial jail credit against his state

8

sentence, § 3585(b) precludes applying the credit in the federal sentence.

Lastly, the petitioner asserts that he is entitled to credits under the case *Kayfez v. Gasele*, 993 F.2d 1288 (7th Cir. 1993). (Petition at 7-9). Under *Kayfez*, an award of jail time credit is only appropriate if the raw expired full term ("EFT") of the state sentence exceeded the raw EFT of the federal sentence, as it did in that situation. *Carmona v. Williamson*, 2006 WL 3042967 at *3 (M.D. Pa. 10/23/2006). The respondent replies that the petitioner is not entitled to additional credit. Specifically, the respondent asserts a follows:

> For an inmate to receive Kayfez credit, the raw full term date of the federal sentence must be shorter than the state raw full term date. If this is the case, the BOP will back up the raw full term date of the state sentence (the number of days the inmate was to [serve] in prior custody prior to receiving his first sentence). Once the date is backed up, if it falls earlier than the federal raw full term date, the number of days from that date until the federal raw full term date is the number of days of prior credit the inmate will receive.
>
> In the case of inmate Bakenhaus [sic], his state raw full term date is July 24, 2018. Inmate Bakenhaus [sic] was in prior custody for 522 days before he was sentenced in federal court. Once his state raw full term date is backed up 522 days, the new state raw full term date is April 26, 2017. Since inmate Bakenhaus' [sic] federal raw full term date is January 24, 2011, the number of prior custody days will not back his state sentence up enough for inmate Bakenhus to receive benefit under Kayfez.

(Ex. B at 3-4; see also Ex. N).

Section § 3585(b) governs the application of prior custody credit, prohibiting the application of credit which has been credited against another sentence. There are exceptions, such as *Kayfez* situations involving "no benefit." In *Kayfez*, the petitioner received the additional credit because otherwise he would receive no practical benefit against his "raw" federal sentence, even though the two sentences were concurrent. *Kayfez*, 993 F.2d at 1290. However, in the present case, the petitioner has received the requisite benefit under § 3583(b) in that he was

9

paroled from his Tennessee state sentence due, in part, to the credit against his "raw" state sentence that he received.  Since that the raw state sentence (EFT) is longer than his federal "raw" sentence, he does not qualify for *Kayfez* credits.  Accordingly, this claim is insufficient to support his petition for relief.

## CONCLUSION

Premised on the foregoing, the petitioner's petition is due to be denied.  An appropriate order will be entered in accordance with this Memorandum Opinion.

Done the 30th day of January, 2007.

_____
U.W. Clemon
United States District Judge